IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SUSAN DOUGLAS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 11-175-CJP** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Susan Douglas is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits (DIB).[1]

## Procedural History

Ms. Douglas applied for DIB in September, 2005, alleging disability beginning on February 5, 2005. (Tr. 120). The application was denied initially and on reconsideration. After holding a hearing, ALJ Alexander Weir, III, denied the application for benefits in a decision dated June 16, 2009. (Tr. 9-17). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff argues that the ALJ erred in the following respects:

---

[1]This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 15.

1

1. He failed to follow agency procedures in that plaintiff's counsel was not provided with a "worked up" file or a copy of the consultative examiner's report prior to the hearing, which resulted in the denial of due process.

2. He erred in weighing the medical evidence.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported

by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Ms. Douglas is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Weir followed the five-step analytical framework described above. He determined that Ms. Douglas had not been engaged in substantial gainful activity since the alleged onset date, and that she had severe impairments of back disorder and fibromyalgia. He found that her mental impairments were not severe. He further determined that these impairments do not meet or equal a listed impairment. The ALJ found that Ms. Douglas had the residual functional capacity to perform a full range of work at the medium exertional level. Based on the testimony of a vocational expert, the ALJ found that Ms. Douglas has the capacity to perform her past work

3

as a production supervisor.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. Because Ms. Douglas does not challenge the ALJ's findings with respect to her mental condition, the Court will not describe that evidence.

**1.     Agency Forms**

Ms. Douglas was born in 1954, and was 49 years old when she allegedly became disabled. She was last insured for DIB as of December 31, 2009. (Tr. 153).

In her application for benefits, Ms. Douglas said that she became disabled on February 5, 2005. (Tr. 120). In a Disability Report, she said that she became unable to work due to her condition on February 5, 2004. (Tr. 158).

Ms. Douglas had previously worked for an automotive lighting manufacturer from 1988 through 2004. She worked as a team leader, a supervisor, and a manufacturing manager. (Tr. 177-18).

**2.     Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on May 15, 2009. (Tr. 32). The hearing was done via video conference. The ALJ was in Los Angeles, California, and Ms. Douglas and her attorney were in Mount Vernon, Illinois. (Tr. 31).

The ALJ told Ms. Douglas that the evidence that he was going to be looking at "are the documents in the file that was available for you and your counsel to review before we began." (Tr. 33). Plaintiff's counsel then informed the ALJ that he had not received the entire file. Specifically, he had not received a copy of the report of a consultative examination which took

4

place in January, 2009, although his office had made several requests for it. (Tr. 33). He also informed the ALJ that he did not receive the "updated disc" and thus did not know what evidence the record contained. (Tr. 34). The ALJ told counsel that a copy of the report and an updated disc would be sent to him after the hearing. Counsel asked the ALJ to hold the record open so that he might review the report and "comment on that if necessary." The ALJ refused the request to hold the record open, but did say that he would allow counsel one week in which to submit argument. (Tr. 34).

The ALJ then began to take testimony from Ms. Douglas. She testified that she completed high school and had some college credits but no college degree. (Tr. 37). She last worked for American Lighting in 2004. (Tr. 38). She did work as a "virtual recruiter" in 2006, using the computer and telephone to recruit job applicants. She did this work part-time from home. (Tr. 40-41). She stopped doing that work in December, 2008, because she was losing her contracts to do it. (Tr. 52-53). She then worked part-time as a cashier at a small grocery store. She was working as a cashier about 15 hours a week at the time of the hearing. The owner let her take breaks and take off whenever she wanted to. (Tr. 42-43).

Plaintiff testified that she was being treated for high blood pressure, heart problems, asthma, fibromyalgia and depression. (Tr. 43-44). She was unable to work full-time because of continuous sciatic and back pain and fibromyalgia pain. She also said she had pulmonary emboli which caused oxygen deprivation, which resulted in short-term memory loss. (Tr. 45). She suffers from fatigue. (Tr. 46). She testified that she would no longer be able to do the recruiting job because of her memory problems. (Tr. 55).

5

Heidi Paul testified as a vocational expert.[2]   She testified that plaintiff's past work as a production supervisor is at the light level as it is generally performed, but it was at the medium level as performed by Ms. Douglas.  Her work as a recruiter was sedentary, and her cashier work was light.

The ALJ asked the VE to assume a person with plaintiff's education who could do medium work, with moderate limitation in ability to do complex tasks and in maintaining attention and concentration.  The VE testified that this person would be able to do all of plaintiff's past work.  (Tr. 58-59).

The ALJ then added the assumption that the person needed a sit/stand option.  This person could not do the production supervisor work, but could do the recruiter and cashier jobs. (Tr. 59).

The ALJ then asked the VE to assume a person who could do light work with the same limitations as in the previous hypotheticals.  Again, this person could do only the recruiter and cashier jobs.  (Tr. 59-60).

3. **Medical Records**

Ms. Douglas fell on ice on February 5, 2004, which caused pain in her low back that radiated down her legs.  (Tr. 359).  An MRI on February 24, 2004, showed bulging discs at L3-4 and L4-5, with mild effacement of the canal.  (Tr. 358).  She was treated by a chiropractor, Dr. John Hancock.  In April, 2004, he wrote a note indicating that she was still unable to work but did not need an orthopedic consult as she was responding to treatment.  (Tr. 374).

Dr. L.A. Phipps, M.D., saw plaintiff at the Family Medical Center in Paris, Illinois, on

---

[2]Dr. Paul's c.v. is located at Tr. 85.

April 6, 2004. He noted that plaintiff had a "unique, long, complex story." After she fell on the ice, she developed bilateral pulmonary emboli, for which she was treated by another doctor. On exam, her chest was clear and she had regular heart rate and rhythm. Straight leg raising was negative. Deep tendons reflexes were 2+ and equal. She was tender at L3, L4 and L5. He found it hard to believe that the minor bulges shown on the MRI were "giving this woman this degree of pain and difficulty." He went on to say that he also found it hard to believe that "all of her problems are not intertwined." He recommended a CT of her retroperitoneal space, and said he would not be surprised to find a large hematoma or a mass. (Tr. 562). A CT scan was done, which was negative. (Tr. 564). In May, 2004, another doctor at the Family Medical Center noted that she was having "persistent pain to the point where she can hardly function during the day." His diagnosis was low back pain with herniated disc. (Tr. 568).

On Dr. Phipps' referral, Ms. Douglas underwent physical therapy for her low back pain at Paris Community Hospital beginning on April 20, 2004. She discontinued therapy on May 7, 2004, to do an at-home program for range of motion and stretching. (Tr. 244-251).

Ms. Douglas began seeing another chiropractor, Dr. Michael Bowman, on May 28, 2004. He treated her every few days from June 1, 2004, through November 27, 2004. (Tr. 432-438). There were a few weeks in July and August when she was not treated; she apparently took a trip to Yellowstone National Park during that time. (Tr. 420).

Plaintiff continued to see Dr. Bowman in 2005. On March 14, 2005, an MRI showed mild degenerative bulging discs at L2-3 and L3-4, and a small to medium sized disc protrusion at L4-5 with no central canal stenosis. The nerve root did not appear to be compressed. (Tr. 609). Dr. Bowman wrote a report in June, 2005, in which he said that she had an exacerbation of her low back pain, and he felt that she "will always be in the path of some lower back pain." He

7

noted that she had every form of conservative care, with only "some tolerable lessening" of her pain. (Tr. 612-613).

On May 18, 2005, Ms. Douglas saw Christopher Newman, M.D., for diffuse general joint and muscle aches and pains. On exam, she weighed 222 pounds. She had diffuse tenderness to palpation on all of her trigger points. His impression was fibromyalgia. He prescribed Flexeril and a daily aerobic exercise program. (Tr. 641-642). In September, 2005, plaintiff told Dr. Newman that her fibromyalgia was doing much worse and she had diffuse muscle pain. He added Cymbalta to the previously prescribed Flexeril and encouraged her to exercise daily. (Tr. 681-682). In October, 2005, plaintiff reported that she was doing a little bit better with her fibromyalgia and she was trying to get disability. Dr. Newman again counseled her on the importance of exercise. He referred plaintiff for a functional capacity evaluation in connection with her application for disability benefits. (Tr. 679-680).

The functional capacity examination was done by physical therapist Karen Huelsmann on November 1, 2005. Ms. Huelsmann determined that plaintiff was able to do sedentary work. (Tr. 666-667).

In November, 2008, Dr. Richard Bilinsky, a state agency consultant, completed a physical RFC assessment form. He concluded that Ms. Douglas was capable of medium work (able to frequently lift 25 pounds, occasionally lift 50 pounds, sit/stand/walk for 6 out of 8 hours, unlimited push/pull), limited to only occasional climbing ladders, ropes and scaffolds, stooping and crouching. (Tr. 717-724).

There are no medical records from the years 2006, 2007 or 2008.

In January, 2009, Vittal Chapa, M.D., performed a consultative examination of Ms. Douglas. He concluded that she could frequently lift 20 pounds and occasionally lift 50 pounds;

sit for a total of 8 hours; stand for a total of 4 hours; walk for a total of 3 hours; frequently reach, handle, finger, feel and push/pull; occasionally operate foot controls; occasionally balance, stoop, kneel, crouch and crawl; and never climb stairs, ramps, ladders or scaffolds. (Tr. 771-785).

## Analysis

For her first point, plaintiff argues that she was denied due process at the evidentiary hearing because her attorney was not furnished with a copy of all of the evidence prior to or at the hearing. Most notably, plaintiff and her counsel were not given a copy of Dr. Chapa's report.

Plaintiff points out that the agency's *Hearing, Appeals, and Litigation Law Manual*, knows as HALLEX, provides that a claimant or her representative are to be furnished with copies of the evidence before the hearing. Plaintiff's counsel admits that the HALLEX is a compilation of policy statements and procedures, and the Seventh Circuit Court of Appeals has not addressed the issue of whether the HALLEX procedures have the force of law. Commendably, counsel cites a Seventh Circuit case holding that the POMS Manual, which is an internal handbook for use by agency employees, does not have the force of law. This suggests that the Seventh Circuit would likely hold that the HALLEX procedures likewise do not have the force of law. Other Circuits have so held. See, Doc. 12, pp. 5-6.

This Court agrees that the HALLEX procedures, which are not regulations promulgated after notice and comment, are not legally binding and cannot, by themselves, be relied upon to demonstrate error here. See, **Schweiker v. Hanson, 450 U.S. 785, 789 (1981)**. However, that is not the end of the inquiry.

The Supreme Court has long recognized that a Social Security claimant is entitled to

9

procedural due process. See, **Richardson v. Perales, 402 U.S. 389, 401-402 (1971)**. "Due process requires that a Social Security disability claimant be offered a 'full and fair' hearing." **Davenport v. Astrue, 417 Fed. Appx. 544, 546 (7th Cir. 2011) (internal citation omitted).**

Here, plaintiff and her attorney were denied the right to review all of the evidence, including Dr. Chapa's report, before or even during the hearing. A hearing at which the claimant does not have access to the evidence is not a full and fair hearing, and does not comport with the requirements of due process.

The Commissioner concedes that the ALJ erred by not providing plaintiff's counsel with a copy of Dr. Chapa's report. He argues that the error was harmless in that the ALJ did not rely on Dr. Chapa's opinion. See, Doc. 21, pp. 8-9. This argument ignores the fact that Dr. Chapa's report was, at least in part, favorable to plaintiff.

Dr. Chapa, who examined plaintiff at the request of the agency, concluded that she had limitations in her ability to stand and walk, as well as in her ability to climb stairs, ramps, ladders and scaffolds. Further, Dr. Chapa found that she could lift 20 (not 25) pounds frequently. These limitations are inconsistent with the ability to do a full range of medium work. See, 20 C.F.R. §404.1567(c); SSR 83-10 at *6 ("In most medium jobs, being on one's feet for most of the workday is critical.") It was not harmless error to deprive Ms. Douglas of access to this favorable evidence prior to the hearing.

Ms. Douglas also takes issue with the ALJ's weighing of the medical evidence. The ALJ discounted the opinions of her treating chiropractor, the physical therapist who performed a functional capacity examination, and Dr. Chapa. The ALJ said that he gave weight to the opinion of Dr. Bilinsky, who did the RFC assessment.

The ALJ is responsible for resolving conflicts in the medical evidence. In so doing, he

must build an accurate and logical bridge between evidence and the result. ***Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).** The ALJ errs when he selectively discusses the medical evidence, ignoring the parts that conflict with his decision. ***Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000).** The ALJ did just that with respect to Dr. Bilinsky's RFC assessment.

Dr. Bilinsky was acting as a state agency physician. The ALJ was required by 20 C.F.R. §404.1527(f) to explain the weight given to his opinion. ***McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011).** Dr. Bilinsky opined that Ms. Douglas had postural limitations in that she could only occasionally stoop, crouch, and climb ladders, ropes and scaffolds. (Tr. 719). The ALJ acknowledged that Dr. Bilinsky found these limitations. See, Tr. 21. These limitations are inconsistent with the capacity to do a full range of medium work. In particular, the full range of medium work requires frequent, not occasional, stooping. SSR 83-10, at *6.

The ALJ ultimately concluded that Ms. Douglas had the RFC to do a full range of work at the medium level. He said this assessment was "consistent" with Dr. Bilinsky's opinion. (Tr. 27). However, the ALJ never said why he rejected that part of Dr. Bilinsky's opinion in which he found postural limitations that would preclude the full range of medium work. This was error. ***Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).**

Because of the ALJ's errors, this case must be remanded. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Douglas is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

It is therefore **ORDERED** that the Commissioner's final decision denying Susan

Douglas' application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:  February 16, 2012.**


<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**United States Magistrate Judge**